IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | SUPERSEDING |
| | : | |
| v. | : | 1:22CR112-1 |
| | : | |
| BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr. | : : : | |



The Grand Jury charges:

Background

1. At various times relevant to this Indictment:

    a. BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., resided in Greensboro, North Carolina, in Guilford County, in the Middle District of North Carolina.

    b. Creative Resource Financial Recovery, Inc. ("Creative Resource Financial Recovery") was a corporation registered in Greensboro, North Carolina with the North Carolina Secretary of State.

    c. "Individual 1" was a resident of Concord, North Carolina.

    d. "Individual 2" was a resident of Monroe, North Carolina.

    e. "Individual 3" was a resident of Brooklyn, New York.

    f. "Individual 4" was a resident of Monroe, North Carolina.

    g. "Individual 5" was a resident of Alexandria, Virginia.

h. "Individual 6" was a resident of the Bronx, New York.

i. "Individual 7" was a resident of Brooklyn, New York.

j. "Individual 8" was a resident of Greensboro, North Carolina.

k. "Individual 9" was a resident of Charlotte, North Carolina.

l. Charlotte Metro Credit Union was a credit union headquartered in Charlotte, North Carolina, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

m. Visa, Inc. ("Visa") was a financial services company headquartered in San Francisco, California.

n. SunTrust Banks, Inc. ("SunTrust") was a bank headquartered in Atlanta, Georgia, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

o. Carrington Mortgage Services, LLC ("Carrington Mortgage Services") was a mortgage company headquartered in Anaheim, California, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

p. Discover Bank ("Discover") was a bank headquartered in New Castle, Delaware, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

q. Wells Fargo Bank, N.A. ("Wells Fargo") was a bank headquartered in San Francisco, California, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

r. Bank of America Corporation ("Bank of America") was a bank headquartered in Charlotte, North Carolina, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

s. Barclays Bank Delaware ("Barclays") was a bank headquartered in Wilmington, Delaware, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

t. Ocwen Financial Corporation was a mortgage company headquartered in West Palm Beach, Florida, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

u. Parkchester North Condominium was a condominium association located in the Bronx, New York.

v. Nationstar Mortgage Holdings, Inc. ("Nationstar Mortgage") was a mortgage company headquartered in Dallas, Texas, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

w. Caliber Home Loans, Inc. ("Caliber Home Loans") was a mortgage company headquartered in Coppell, Texas, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

3

x. Branch Banking and Trust Company ("BB&T") was a bank headquartered in Winston-Salem, North Carolina, and was a financial institution as that term is defined by Title 18, United States Code, Section 20.

The Fraudulent Scheme

2. From on or about July 11, 2016, continuing up to and including on or about February 28, 2020, the exact dates to the Grand Jurors unknown, BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., devised and intended to devise a scheme to defraud various individuals and companies, including financial institutions, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

3. It was the purpose of the scheme for BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., to enrich himself by obtaining money from individuals who paid BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., to create bonds purporting to discharge debt held or serviced by various companies, including financial institutions.

4. It was part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., spoke at various financial seminars at which BEN EARL-JUNIOR JOHNSON, also

4

known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., told attendees, in sum and substance, that any person with a Social Security number could discharge personal debts using bonds assigned against an account held in that person's name or in the name of another with the United States Treasury.

5. It was further part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., did, in fact, create fictitious bonds that purported to discharge debt held or serviced by various companies.

6. It was further part of the scheme that these bonds were purportedly issued under the authority of a State of the United States.

7. It was further part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., created these fictitious bonds on behalf of individuals in exchange for money.

8. It was further part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., received payments for some of the bonds through an account owned by Creative Resource Financial Recovery.

9. It was further part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr.,

shared the proceeds of the scheme with others known and unknown to the Grand Jurors in exchange for assistance in executing the scheme.

10. It was further part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., wanted the individuals who purchased the fictitious bonds to believe that those bonds were legitimate means with which to discharge debt, when, in fact, BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., knew well that the fictitious bonds were fictitious, fraudulent, without monetary value, and worthless.

11. It was further part of the scheme that BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., wanted the companies who received the fictitious bonds to be deceived into discharging the debt described in the fictitious bonds.

Execution

COUNT ONE through COUNT SIXTEEN

12. On or about each of the dates set forth below, in the Middle District of North Carolina, and elsewhere, BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., for the purpose of executing the scheme described above, and with the intent to defraud, passed, uttered, presented, offered, brokered, issued, and sold a false and fictitious

6

instrument, that is, a "state certified bond assignment," each dated and made payable as described below, each appearing, representing, purporting, and contriving through scheme and artifice to be an actual security and financial instrument issued under the authority of a State of the United States, and attempted and caused the same, each occurrence constituting a separate offense:

| # | DATE (on or about) | IN THE AMOUNT OF | PAYABLE TO | FOR THE BENEFIT OF |
|---|---|---|---|---|
| 1 | May 1, 2017 | $1,360.18 | Charlotte Metro Credit Union | Individual 1 |
| 2 | May 12, 2017 | $2,110.30 | Visa | Individual 1 |
| 3 | June 19, 2017 | $15,612.18 | SunTrust | Individual 2 |
| 4 | July 14, 2017 | $520,432.18 | Carrington Mortgage Services | Individual 3 |
| 5 | July 17, 2017 | $14,968.18 | SunTrust | Individual 2 |
| 6 | August 8, 2017 | $8,700.20 | Discover | Individual 2 |
| 7 | August 8, 2017 | $9,457.70 | Wells Fargo Financial N.B. | Individual 4 |
| 8 | September 5, 2017 | $6,535.00 | Bank of America | Individual 2 |
| 9 | September 5, 2017 | $2,735.00 | Barclay Card | Individual 2 |
| 10 | November 16, 2017 | $654,956.76 | Ocwen Loan Servicing, LLC | Individual 5 |
| 11 | December 1, 2017 | $55,525.00 | Parkchester North Condominium | Individual 6 |
| 12 | December 1, 2017 | $157,525.00 | Nationstar Mortgage | Individual 6 |

7

| # | DATE (on or about) | IN THE AMOUNT OF | PAYABLE TO | FOR THE BENEFIT OF |
|---|---|---|---|---|
| 13 | July 17, 2018 | $532,525.00 | Caliber Home Loans | Individual 7 |
| 14 | December 28, 2018 | $82,357.18 | Fay Servicing | Individual 8 |
| 15 | February 3, 2020 | $10,758.20 | Bank of America | Individual 9 |
| 16 | February 28, 2020 | $87,618.20 | Specialized Loan Servicing, LLC | Individual 9 |

All in violation of Title 18, United States Code, Sections 514(a)(2) and 2.

COUNT SEVENTEEN through COUNT TWENTY-SEVEN

13. Paragraph 1 through Paragraph 12 of the Indictment are realleged and reincorporated herein as if fully set forth.

14. On or about each of the dates set forth below, in the Middle District of North Carolina, and elsewhere, BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., did knowingly execute, and attempt to execute, a scheme to defraud a financial institution, and to obtain monies, funds, credits, assets, securities, and other property from said financial institution by means of false and fraudulent pretenses, representations, and promises, to wit, by submitting a false and fictitious instrument to the financial institution as described below, and causing the same, each occurrence constituting a separate offense:

| # | DATE (on or about) | IN THE AMOUNT OF | FINANCIAL INSTITUTION | FOR THE BENEFIT OF |
|---|---|---|---|---|
| 17 | May 1, 2017 | $1,360.18 | Charlotte Metro Credit Union | Individual 1 |
| 18 | May 12, 2017 | $2,110.30 | Charlotte Metro Credit Union | Individual 1 |
| 19 | June 19, 2017 | $15,612.18 | SunTrust | Individual 2 |
| 20 | July 14, 2017 | $520,432.18 | Carrington Mortgage Services | Individual 3 |
| 21 | July 17, 2017 | $14,968.18 | SunTrust | Individual 2 |
| 22 | August 8, 2017 | $8,700.20 | Discover Bank | Individual 2 |
| 23 | September 5, 2017 | $6,535.00 | Bank of America | Individual 2 |
| 24 | September 5, 2017 | $2,735.00 | Barclays | Individual 2 |
| 25 | November 16, 2017 | $654,956.76 | Ocwen Financial Corporation | Individual 5 |
| 26 | December 1, 2017 | $157,525.00 | Nationstar Mortgage | Individual 6 |
| 27 | July 17, 2018 | $532,525.00 | Caliber Home Loans | Individual 7 |

All in violation of Title 18, United States Code, Sections 1344(1), 1344(2), and 2.

COUNT TWENTY-EIGHT through COUNT THIRTY-FOUR

15. Paragraph 1 through Paragraph 14 of the Indictment are realleged and reincorporated herein as if fully set forth.

16. On or about each of the dates set forth below, in the Middle District of North Carolina, and elsewhere, BEN EARL-JUNIOR JOHNSON, also known as Ben Earl Johnson, Jr., and Ben Earl Johnson, Sr., aided and abetted

9

by others known and unknown to the Grand Jurors, for the purpose of executing the above-described scheme to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire communications in interstate commerce, the following writings, signals, and sounds, each transmission constituting a separate offense:

| COUNT | DATE (on or about) | DESCRIPTION OF THE WIRE TRANSMISSION |
|---|---|---|
| 28 | August 9, 2017 | Settlement of a bank transfer in the amount of $41,548 from BB&T account ending 5569 to Wells Fargo account ending 8000 as partial payment for a fictitious bond created for the benefit of Individual 3 |
| 29 | October 27, 2017 | Settlement of a bank transfer in the amount of $69,750.35 from BB&T account ending 5569 to Wells Fargo account ending 8000 as partial payment for a fictitious bond created for the benefit of Individual 3 |
| 30 | December 1, 2017 | Settlement of check 2960714 in the amount of $15,000 into Wells Fargo account ending 8000 as payment for two fictitious bonds created for the benefit of Individual 6 |
| 31 | December 4, 2017 | Settlement of check 9663 in the amount of $988 into Wells Fargo account ending 8000 as partial payment for a fictitious bond created for the benefit of Individual 7 |
| 32 | December 6, 2017 | Settlement of check 9661 in the amount of $33,000 into Wells Fargo account ending 8000 as partial payment for a fictitious bond created for the benefit of Individual 7 |

| COUNT | DATE (on or about) | DESCRIPTION OF THE WIRE TRANSMISSION |
|---|---|---|
| 33 | December 8, 2017 | Settlement of check 9662 in the amount of $5,547.07 into Wells Fargo account ending 8000 as partial payment for a fictitious bond created for the benefit of Individual 7 |
| 34 | December 31, 2018 | Settlement of a cashier's check in the amount of $21,700 into Wells Fargo account ending 8000 as partial payment for a fictitious bond created for the benefit of Individual 8 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

FORFEITURE ALLEGATION

1. The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of one or more of the offenses alleged in Counts Seventeen through Thirty-Five of this Indictment, the defendant, BEN EARL-JUNIOR JOHNSON, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to or obtained directly or indirectly as a result of such offense, or a conspiracy to commit such offense.

3. The property to be forfeited may include, but is not limited to, a money judgment, in an amount to be determined, representing the value of the property subject to forfeiture as a result of such offense.

4. If any of the property described above as being subject to forfeiture as a result of any act or omission of the defendant cannot be located upon the exercise of due diligence, has been transferred or sold to or deposited with a third person, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), Rule 32.2, Federal Rules of Criminal Procedure, and Title 28, United States Code, Section 2461(c).

DATED: October 31, 2022

SANDRA J. HAIRSTON
United States Attorney

BY: TANNER L. KROEGER
Assistant United States Attorney

BY: ASHLEY E. WAID
Assistant United States Attorney

A TRUE BILL:

FOREPERSON

13

Case 1:22-cr-00112-WO   Document 19   Filed 11/01/22   Page 13 of 13